# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **TANNER STEWART,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:26-cv-87-ACA** |
| | } | |
| **RELI SETTLEMENT SOLUTIONS** | } | |
| **LLC, et al.,** | } | |
| | } | |
| **Defendants.** | | |

## MEMORANDUM OPINION AND ORDER

In 2020, Kent Stewart sold his business, Defendant Reli Settlement Solutions, LLC, to Defendant Acrisure LLC. During and after the transaction, Acrisure told Kent and his son, Tanner Stewart, that Tanner would become Reli's chief executive officer when Kent retired.[1] So Tanner signed an employment agreement with Reli containing non-compete and non-solicitation provisions and continued to work at the company. But Reli later hired Defendant Morgan Means to take over as CEO, and when Tanner discovered that he would not fill that role, he resigned.

In January 2026, Tanner filed this action in the Circuit Court of Jefferson County, Alabama, seeking (1) a declaratory judgment that his employment agreement is invalid ("Count One") and (2) damages for his claims that Acrisure,

---

[1] The court refers to Kent Stewart and Tanner Stewart by their first names to avoid any confusion.

Reli, and Ms. Means engaged in a civil conspiracy to defraud Tanner ("Count Two") and negligent misrepresentation by Acrisure ("Count Three"). The defendants removed the action to this court, contending Tanner fraudulently joined the only non-diverse defendant to destroy diversity jurisdiction. (Doc. 1). Tanner moves to remand. (Doc. 10).

For the reasons below, the court **WILL GRANT** Tanner's motion and **WILL REMAND** this case back to the Circuit Court of Jefferson County, Alabama. (*Id.*). The court **FINDS AS MOOT** Tanner's motion for reconsideration. (Doc. 38).

## I.      BACKGROUND

"The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). The court "must evaluate the factual allegations in the light most favorable to the plaintiff," resolving any ambiguity in his favor. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).

Tanner started his employment with Reli in December 2018 as a clerical employee, but within two years, he became the manager of the operations department and corporate accounting systems. (Doc. 1-1 ¶¶ 7–8). In 2020, Kent sold Reli to Acrisure. (*Id.* ¶ 6). Reli became a wholly owned subsidiary of Acrisure. (Doc.

1-4 ¶ 3). Kent and Tanner continued to work for the company. (Doc. 1-1 ¶¶ 6–7, 9). During and after the transaction, "Acrisure repeatedly assured [Kent] and [Tanner] that [Tanner] would" become CEO when Kent retired. (*Id.* ¶ 9). Based on these representations, Tanner signed an employment agreement that contained non-compete and non-solicitation provisions. (*Id.* ¶¶ 10–15, 31). Kent also signed an employment agreement and agreed to remain at the company for a minimum of two years to transition the CEO role to Tanner. (*Id.* ¶ 9).

Despite Acrisure's representations "on numerous occasions," Acrisure did not plan to make Tanner the CEO. (Doc. 1-1 ¶¶ 27–28). Instead, the company hired Ms. Means in 2025. (*Id.* ¶ 21). Acrisure, one of its employees, and Ms. Means agreed to "keep [Kent] and [Tanner] at the Company until [Ms.] Means had sufficient knowledge of the business to take over management of the Company." (*Id.* ¶¶ 20–21). Because Tanner believed he would become CEO, he remained at Reli during this time. (*Id.* ¶ 31). But when he and Kent discovered that Ms. Means would become CEO, both resigned. (Doc. 1-1 ¶ 22).

## II.    DISCUSSION

Federal courts are of limited jurisdiction, and a defendant may remove only cases that the court would have jurisdiction over if originally filed in federal court. 28 U.S.C. § 1441(a); *see Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87–88 (2014). Thus, a defendant may remove a case based on diversity

jurisdiction when the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Tanner and Ms. Means are both citizens of Alabama. (Doc. 1-1 ¶¶ 1, 4; doc. 1 at 4–5).

The defendants argue that this court has diversity jurisdiction because Tanner fraudulently joined Ms. Means. (Doc. 1 at 5–15; doc. 29). A court will find joinder fraudulent and disregard the citizenship of a party in three situations: (1) "when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant," (2) "when there is outright fraud in the plaintiff's pleading of jurisdictional facts," or (3) "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). The burden of establishing fraudulent joinder rests on the removing party, and it is a heavy one. *Crowe*, 113 F.3d at 1538.

The defendants assert only the first type of fraudulent joinder and argue that there is no possibility a state court could find that Ms. Means made any fraudulent misrepresentations or that she engaged in a conspiracy. (Doc. 1 at 5–6; doc. 29 at 9). The court addresses whether Tanner can assert a conspiracy claim against Ms. Means before turning to fraudulent misrepresentation.

4

### 1. Civil Conspiracy

Count Two alleges Ms. Means, Reli, and Acrisure conspired to fraudulently misrepresent that Tanner would take over as CEO so that he and Kent would remain in their positions until Ms. Means had sufficient knowledge to manage the company. (Doc. 1-1 ¶¶ 21, 26–33). A conspiracy requires "a concerted action by two or more people that achieved an unlawful purpose or a lawful end by unlawful means." *Luck v. Primus Auto. Fin. Servs., Inc.*, 763 So. 2d 243, 247 (Ala. 2000). Defendants argue that the intracorporate conspiracy doctrine precludes Tanner from establishing any concerted action because Ms. Means is an employee of Reli and thus cannot conspire with Reli or its parent, Acrisure. (Doc. 1 at 14–15; doc. 29 at 12–14).

The intracorporate conspiracy doctrine "holds that a corporation may not be held liable for any alleged conspiracy with its own employees or agents." *M & F Bank v. First Am. Title Ins.*, 144 So. 3d 222, 234 (Ala. 2013). So Reli cannot conspire with Ms. Means. *See id.* But there is no precedential authority from the Alabama Supreme Court for the proposition that the doctrine extends to conspiracies between a wholly owned subsidiary (or that company's employee) and a parent company. So there is an open question whether Alabama law would apply the doctrine in this case.[2]

---

[2] Because the court concludes it is an open question whether the intracorporate conspiracy doctrine applies to a parent and its wholly owned subsidiary, the court does not rely on the arguments and evidence presented in the defendants' sur-reply. (Doc. 37). Accordingly, the court

And other state courts have split on whether the intracorporate conspiracy doctrine applies in the parent-subsidiary context. *See, e.g.*, *Am. Akaushi Ass'n, Inc. v. Twinwood Cattle Co., Inc.*, No. 14-21-00701-CV, 2025 WL 450750, at *32 (Tex. App. Feb. 11, 2025) (recognizing a divide on the issue among Texas appellate courts); *SEECO, Inc. v. Hales*, 22 S.W.3d 157, 173 (Ark. 2000) ("It seems logical to us that if the corporate subsidiaries were separate enough to contract with each other . . . they were sufficiently separate to engage in a civil conspiracy."); *Shared Communications Servs. v. Bell Atl. Prop.*, 692 A.2d 570, 574 (Pa. Super. Ct. 1997) (rejecting a *per se* rule that parents and wholly owned subsidiaries cannot conspire with each other).

The court "must resolve any uncertainties about state substantive law in" Tanner's favor. *Crowe*, 113 F.3d at 1538. An Alabama court therefore could hold that a parent company can conspire with its wholly owned subsidiary or the subsidiary's employee, so there is a "possibility" that Ms. Means could conspire with Acrisure. *See id.*; (doc. 1-1 ¶¶ 9, 21, 27–31). The court cannot conclude there is "no possibility" of recovery against Ms. Means based on the intracorporate conspiracy doctrine.

---

**FINDS AS MOOT** Tanner's motion for reconsideration of the court's decision to grant the defendants leave to file a sur-reply. (Doc. 38).

6

2.  Fraudulent Misrepresentation

To succeed on a conspiracy claim, a plaintiff "must have a valid underlying cause of action." *Callens v. Jefferson County Nursing Home*, 769 So.2d 273, 280 (Ala. 2000). Tanner alleges Ms. Means and Acrisure conspired to fraudulently misrepresent that he would take over as CEO so that Tanner and Kent would remain in their roles until Ms. Means had sufficient information to manage Reli. (Doc. 1-1 ¶¶ 26–33). Accordingly, the court considers whether there is "a possibility that a state court would find that the complaint states a cause of action" for fraudulent misrepresentation. *See Crowe*, 113 F.3d at 1538 (quotation marks omitted).

For fraudulent misrepresentation, the complaint must allege "(1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation." *Padgett v. Hughes*, 535 So. 2d 140, 142 (Ala. 1988). "[F]or a promise to constitute a fraudulent misrepresentation, there must have been at the time the promise was made an intention not to perform, and such a promise must have been made with the intent to deceive." *Trum v. Melvin Pierce Marine Coating, Inc.*, 562 So. 2d 235, 237 (Ala. 1990).

Here, Tanner alleges that Acrisure never intended to make him CEO of Reli. Yet on "numerous occasions," Acrisure told Tanner that he would become CEO. (Doc. 1-1 ¶¶ 9, 27–29). Because of these representations, Tanner signed an

employment agreement containing non-compete and non-solicitation provisions and continued his employment with Reli. (*Id.* ¶¶ 18, 31). Acrisure made these representations to keep Tanner and Kent in their positions until Ms. Means could manage the company. (*Id.* ¶¶ 20–21, 27–29). Thus, the complaint sufficiently alleges Acrisure made fraudulent misrepresentations, making it "possible" for an Alabama court to find a valid underlying cause of action. *See Crowe*, 113 F.3d at 1538.

The defendants resist this conclusion and offer several arguments, but none change the outcome. First, the defendants argue that the complaint fails to allege that Ms. Means made any fraudulent statement, so there can be no claim for fraudulent misrepresentation against her. (Doc. 1 at 6–8; doc. 29 at 20–21). But "it is not necessary that each alleged conspirator be the subject of an underlying cause of action, only that there be a valid cause of action against at least one of the alleged conspirators." *Aliant Bank, a Div. of USAmeribank v. Four Star Invs., Inc.*, 244 So. 3d 896, 932 (Ala. 2017); *see also DGB, LLC v. Hinds*, 55 So. 3d 218, 234 (Ala. 2010) ("In a conspiracy, the acts of coconspirators are attributable to each other.") (quotation marks omitted). Here, the complaint alleges that Acrisure, a co-conspirator, made misrepresentations to Tanner throughout his employment. Thus, those actions are attributable to Ms. Means. *See Aliant Bank*, 244 So. 3d at 932.

Second, the defendants contend that Ms. Means could not have conspired with Acrisure to make any misrepresentations because the complaint alleges only that Acrisure made misrepresentations to get Tanner to sign the 2020 employment agreement that contained non-compete and non-solicitation provisions, and Ms. Means was not an employee at the time. (Doc. 1 at 8, 11–12). The defendants also argue the employment agreement's merger clause bars the fraud claim. (*Id.* at 11–12). But the "court must evaluate the factual allegations in the light most favorable to the plaintiff." *Crowe*, 113 F.3d at 1538. Although most allegations focus on Tanner's employment agreement, the complaint alleges that Tanner relied on misrepresentations by "continuing his employment" with Reli. (Doc. 1-1 ¶ 31; *see also id.* ¶ 18). Accordingly, the complaint does not limit the conspiracy to signing the employment agreement.

Third, the defendants maintain that Ms. Means did not join Reli until March 2025, and the complaint does not allege any fraudulent misrepresentations after that time. (Doc. 1 at 8; doc. 29 at 17–20). The complaint, however, alleges that Acrisure made the misrepresentations to Tanner "repeatedly" and on "numerous occasions" throughout Tanner's employment. (Doc. 1-1 ¶¶ 9, 17–18, 27, 31). The defendants argue that when read in context, these allegations "indicate the alleged statements were made years before Means joined Reli." (Doc. 29 at 19). But the complaint does not state when the misrepresentations stopped, and any factual inference must be

drawn in Tanner's favor. *Crowe*, 113 F.3d at 1538. So the court cannot conclude that Acrisure made no misrepresentations after March 2025.

Lastly, the defendants argue that Tanner did not plead any fraudulent acts with specificity in compliance with Alabama Rule of Civil Procedure 9. (Doc. 1 at 9–10, 13; doc. 29 at 20 n.6). However, when considering whether the plaintiff fraudulently joined a defendant, the court's "task is not to gauge the sufficiency of the pleadings." *Henderson v. Washington Nat. Ins.*, 454 F.3d 1278, 1284 (11th Cir. 2006). Instead, the question is whether "the defendants have proven by clear and convincing evidence that no Alabama court could find [Tanner's] complaint sufficient." *Id.*

The Eleventh Circuit's decision in *Henderson* forecloses the defendants' argument. In the case, the Court assumed that a plaintiff needed to plead fraudulent concealment to toll the statute of limitation. *Id.* at 1283. Applying Alabama Rule of Civil Procedure 9, the Court held the plaintiff alleged a "colorable claim for tolling" because the allegations were more than "generalized and conclusionary allegations," even though the allegations were not "highly detailed." *Id.* at 1284 (quotation marks omitted).

Tanner's allegations are like the allegations in *Henderson*. He alleges that Ms. Means and Acrisure conspired to "eliminate [him] from the Company and take over the CEO role." (Doc. 1-1 ¶ 21). Acrisure knew Tanner remained in his role solely to become CEO, yet it "fraudulently misrepresented on numerous occasions

10

that [Tanner] would assume" the CEO role. (*Id.* ¶¶ 19, 27–29). Acrisure did so to keep Kent and Tanner in their roles until Ms. Means had sufficient information to run the company. (*Id.* ¶ 21). Although the defendants object that the allegations do not include specific dates and locations of the misrepresentation (doc. 29 at 10), the Eleventh Circuit in *Henderson* concluded that similar allegations were sufficient. *See* 454 F.3d at 1284. A state court may ultimately find these allegations insufficient, but the court cannot conclude that "there is no possibility [Tanner] has asserted a colorable claim." *Id.*; *see State Farm Fire & Cas. Ins. Co. v. Lynn*, 516 So. 2d 1373, 1375 (Ala. 1987) (holding an allegation about a misrepresentation complied with Rule 9 even though the allegation did not state the date, location, or the specific person who made the representation). Thus, the defendants have failed to satisfy their burden. *See Henderson*, 454 F.3d at 1284.

## III.   CONCLUSION

For the reasons above, the court **WILL GRANT** Tanner's motion and **WILL REMAND** this action back to the Circuit Court of Jefferson County, Alabama. (Doc. 10). The court **FINDS AS MOOT** Tanner's motion for reconsideration. (Doc. 38).

**DONE** and **ORDERED** this June 16, 2026.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

11